UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSSEAN CRISPIN, | : | Case No. 3:25-CV-00428 (SVN) |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| DOUGHERTY, *et al.*, | : | |
| *Defendants.* | : | August 5, 2025 |

## INITIAL REVIEW ORDER

*Pro se* plaintiff Jossean Crispin, a sentenced[1] inmate currently incarcerated at Corrigan-Radgowski Correctional Center ("Corrigan"), filed this action pursuant to 42 U.S.C. § 1983. He names twenty-nine individual defendants, all employees of the Connecticut Department of Correction ("DOC"), and the Department of Correction itself. He brings claims under the First, Eighth, and Fourteenth Amendments, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), and the federal Patient's Bill of Rights. Plaintiff sues Defendants in their individual and official capacities and seeks damages, injunctive relief, and declaratory relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.

---

[1] Information on the Department of Correction website shows that Plaintiff was sentenced on December 5, 2023, to a term of imprisonment of three years. *See* https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=339978 (last visited August 4, 2025). The Court may take judicial notice of this public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425(KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

§§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2]  Based on this initial review, the Court orders as follows.

## I.    FACTUAL BACKGROUND

The Court does not include herein all of the allegations from the complaint but summarizes only those facts necessary to provide context for initial review.

Plaintiff was imprisoned on December 5, 2023.  *See* Compl., Statement of Facts, ECF No. 1 ¶ 1.  DOC transferred Plaintiff from New Haven County Correctional Center to Cheshire Correctional Institution ("Cheshire") on December 24, 2023.  *Id.* ¶ 2.  After Plaintiff entered Cheshire, he attempted to file multiple civil rights lawsuits against DOC officials.  *Id.* ¶ 3.  Plaintiff claims that DOC officials retaliated against him "[t]he moment" he attempted to file these lawsuits. *Id.* ¶ 4.  Plaintiff goes on to detail various ways in which this retaliation manifested.

While at Cheshire, Plaintiff maintains that he was denied medical and mental health treatment under the "order" of Warden Jennifer Peterson-Reis.  *See id.* ¶ 15.  One such instance occurred in December of 2023 after Plaintiff awoke having an asthma attack.  *Id.* ¶ 18. Correctional Officers "acknowledged the medical emergency," opened Plaintiff's cell door, called medical staff, and sent Plaintiff to the medical department for treatment.  *See id.* ¶ 19.  Once there,

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard.  *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Plaintiff asked medical staff for his breathing treatment, but medical staff refused to provide it. *See id.* ¶ 20. Plaintiff continued to tell medical staff that he needed his breathing treatment, but medical staff told him they were under orders from Warden Peterson-Reis and Dr. Kelly Wolf. *Id.* ¶¶ 21–22. According to Plaintiff, Warden Peterson-Reis ordered all subordinate employees to "systemic[al]ly retaliate" against Plaintiff after Plaintiff filed a grievance against Warden Peterson-Reis. *Id.* ¶ 33. Plaintiff told medical staff that Warden Peterson-Reis's "orders" were given in retaliation for Plaintiff suing Warden Peterson-Reis and Dr. Wolf, and that medical staff, by following the orders, were being complicit in the retaliation. *Id.* ¶¶ 23–24. The nurses "became [i]rate" and called a "code" in an attempt to send Plaintiff to segregation on a "fabricate[d]" disciplinary report. *Id.* ¶ 25. When medical staff could not find a justification to send Plaintiff to segregation, they "kicked [him] out" of the medical department without giving him his breathing treatment. *Id.* ¶ 26.

Plaintiff exited the medical department and felt weak, light-headed, and dizzy as he struggled to breathe. *Id.* ¶ 27. Correctional officers harassed Plaintiff and insulted him about his medical condition. *Id.* Other prison staff put Plaintiff in a wheelchair and transported him back to the medical department, where Plaintiff was "locked in a backroom" and denied medical treatment for an indefinite period. *Id.* ¶ 28.

In January of 2024, Plaintiff attempted to enter a counselor's office to file a motion to reopen in *Crispin v. Walker*, 3:21-cv-00886-KAD. *Id.* ¶ 6. Correctional Officer Tello "bodily blocked" Plaintiff from entering the counselor's office after Plaintiff told Officer Tello why he was attempting to enter the office. *Id.* ¶ 7. Officer Tello told Plaintiff that Plaintiff was "not filing shit." *Id.* ¶ 8. After Plaintiff told Officer Tello that he could not interfere with Plaintiff's access to the court, Plaintiff attempted to open the counselor's office door to notify the counselor of his

issue with Officer Tello. *Id.* ¶¶ 9–10. Officer Tello "violently slammed the door" on Plaintiff's wrist. *Id.* ¶ 11. Counselor Supervisor Domijon, who is a defendant in *Crispin v. Walker*, 3:21-cv-00886-KAD and *Crispin v. Connecticut*, 3:23-cv-01636-SVN, ordered Officer Tello to back up and leave Plaintiff's personal space, but did not separate Plaintiff from Officer Tello. *Id.* ¶ 12. Officer Tello continued to "harass" Plaintiff and "assaultively posture" towards him to intimidate him. *Id.* Deputy Warden Carlos Nunez then called Plaintiff to his office to "interrogate[ ]" Plaintiff about his encounter with Officer Tello. *Id.* ¶ 13. The topic of conversation then shifted to some of Plaintiff's pending lawsuits. *See id.* Deputy Warden Nunez did not do anything about Plaintiff's encounter with Tello. *See id.* ¶ 14.

On September 12, 2024, Plaintiff was standing in line to "conduct litigation[ ]s" at the unit counselor's office. *See id.* ¶ 40. While standing in line, Plaintiff was giving advice to another prisoner on how to file a lawsuit. *See id.* ¶ 41. Correctional Officer Edmonds interrupted the conversation and told Plaintiff that he was "not going to sit there and [l]isten to [Plaintiff] talk shit about his colleagues." *Id.* ¶ 43. Plaintiff told Officer Edmonds that he was having a private conversation that did not concern Officer Edmonds. *Id.* ¶ 44. Plaintiff also told Officer Edmonds to "stop being a coon because he c[ould not] take away [Plaintiff's] [r]ecreation just for giving legal advice." *Id.* ¶ 45 (parentheses omitted).

Officer Edmonds then called a "false code," which caused numerous officers to respond. *Id.* ¶ 46. Among them were Lieutenant Caballero and Captain Blackstock, who began discussing fabricating a disciplinary report against Plaintiff. *Id.* ¶¶ 47–53. Lieutenant Caballero and Captain Blackstock "settled on" issuing Plaintiff a disciplinary report for "[t]hreats" to justify Plaintiff's placement in administrative detention. *Id.* ¶ 54. The disciplinary report was dismissed the following day. *Id.* ¶ 56.

Property Officer Szast told Plaintiff that he was lucky his disciplinary report was dismissed, began harassing Plaintiff, and told Plaintiff that he took his fan and headphones away from him because of the disciplinary report. *See id.* ¶ 57.  Plaintiff told Officer Szast that he was going to write the officer up. *Id.* ¶ 58.  After Officer Szast and Plaintiff "went back and forth arguing," Plaintiff told Officer Szast to return his property and "shut up." *Id.* ¶ 61.  Plaintiff then returned to his cell and wrote a complaint against Correctional Officer Edwards, Lieutenant Caballero, Captain Blackstock, and Correctional Officer Szast. *Id.* ¶ 62.

On December 12, 2024, Plaintiff was "mentally unstable because of sleep deprivation" as he was transferred back from court. *Id.* ¶¶ 66–67.  When Plaintiff returned to Cheshire, he told Officers Szast, Rivera, and Coleman that he needed to use the restroom. *Id.* ¶ 68.  Officer Szast got within inches of Plaintiff's face and began threatening and verbally harassing Plaintiff. *Id.* ¶ 76.  Plaintiff, who was still restrained, "snapped" and yelled at Officer Szast to get out of his face because he was mentally unwell. *Id.* ¶ 77.  Correctional Officer Szast "charged" Plaintiff, threw Plaintiff on a bench, and began choking Plaintiff. *Id.* ¶ 78.  Officer Rivera intervened to remove Officer Szast from Plaintiff. *Id.* ¶ 79.  Officer Rivera pointed a can of pepper spray in Plaintiff's face and told him to move. *Id.* ¶ 80.  Officers Szast and Rivera told Officer Coleman to call a "false code orange." *Id.* ¶ 82.  Plaintiff described the assault to other DOC personnel who responded. *Id.* ¶ 87.  Lieutenant Negelli notified Plaintiff he was being sent to segregation, even though he did not know what Plaintiff would be sent there for. *Id.* ¶ 88.  A day or two later, Lieutenant Negelli admitted to Plaintiff that his disciplinary reports from that day were "bull shit" but that Negelli could not "admit it on the record." *Id.* ¶ 89.  Lieutenant Czzeremcha refused to take Plaintiff's witness statement, allegedly in retaliation for the events. *Id.*

On December 17, 2024, Correctional Officer Rivera attempted to attack Plaintiff again and

had to be restrained by Correctional Officer Vargas.  *Id.* ¶ 90.  Three days later, while Plaintiff was arguing with his attorney during a legal visit, Officer Rivera "snatched" Plaintiff's legal documents from his hand, threw them on the floor, and repeatedly slammed Plaintiff against the wall of the visiting room until another officer intervened.  *Id.* ¶ 92.  Plaintiff was then escorted to punitive segregation.  *Id.* ¶ 93.  While in segregation, Plaintiff notified Warden Peterson-Reis about the assaults.  *Id.* ¶ 94.  Warden Peterson-Reis dismissed his complaints and told Plaintiff, "Where I'm sending you, we call it hell in this Department."  *Id.* ¶ 95.

Plaintiff was transferred to Corrigan a few days later.  *Id.* ¶ 96.  Once at Corrigan, Plaintiff attempted to seek care for his medical and mental health conditions.  *Id.* ¶ 98.  Plaintiff maintains these requests were denied because of his failure to abandon his civil rights actions.  *Id.* Additionally, Plaintiff was threatened by Warden Daniel Dougherty that if he did not stop litigating his actions, someone would be placed in his cell to attack him.  *Id.* ¶ 121.  Shortly thereafter, staff refused to mail legal materials to the Court of Appeals in New York.  *Id.* ¶ 122.  Plaintiff alleges he spent nineteen days in "Isolated Confinement" in retaliation for attempting to litigate his lawsuits, despite that the legal maximum for punitive segregation in the state is fifteen days.  *Id.* ¶¶ 126–27.

Plaintiff also describes several undated incidents in his complaint.  Plaintiff maintains that prison staff deliberately awoke Plaintiff at 4:00am to give Plaintiff his seizure and mental health medication in an attempt to force Plaintiff to choose between taking his medication and getting enough sleep.  *See id.* ¶ 30.  Plaintiff believes that prison staff did this in an effort to force Plaintiff to "mentally decompensate" so that he would "lose control of [his] abilities to reason" and commit disciplinary violations.  *See id.* ¶ 31.  Plaintiff claims that prison officials have "weaponize[ed]" his mental health issues in retaliation for filing civil suits against prison officials.  *See id.* ¶ 32.

Plaintiff also describes an incident in which Dr. Wolf removed Plaintiff from mental health treatment under false pretenses because Plaintiff would not abandon his civil rights suits against prison officials.  *See id.* ¶ 34.  Plaintiff also claims he was denied physical therapy at the University of Connecticut (UConn) in retaliation for his lawsuits.  *See id.* ¶ 36.  Plaintiff has not received physical therapy for his knee and lower back while other inmates have received physical therapy. *See id.* ¶¶ 36–37.  Prison officials have also delayed a medical appointment with Plaintiff's UConn pulmonologist to address Plaintiff's sleep apnea.  *See id.* ¶ 38.  Plaintiff believes prison officials have done this so that he will die of natural causes, which would result in the dismissal of his lawsuits.  *See id.*

Plaintiff also lists other official actions, without description, that DOC officials allegedly took in retaliation for Plaintiff filing civil suits, *see id.* ¶ 39, and generally describes "D.O.C.'s long history of mistreating [p]risoner's with mental illness," *id.* ¶ 101, issues with "Behavioral Operation Status," *id.* ¶ 108, "Preventative Intervention treatment," *id.* ¶ 111, and "D.O.C.'s failure to make reasonable modification[ ]s to policies, practices, and procedures to avoid discriminating against prisoners with mental illness."  *Id.* ¶ 114 (unnecessary caps omitted).  As to the last of these categories, Plaintiff alleges that, instead of making reasonable accommodations for his mental health issues, various Defendants transfer him within D.O.C., as retaliation.  *Id.* ¶ 114.

Plaintiff spoke to Corrigan Warden Daniel Dougherty in February of 2025 about the incidents described in this lawsuit.  *See id.* ¶ 132.  Plaintiff also spoke to DOC Commissioner Angel Quiros about the incidents after Plaintiff transferred to Corrigan.  *See id.* ¶ 133.

## II.    DISCUSSION

Before discussing whether Plaintiff has pleaded sufficient facts in his complaint to state a claim for violation of his federally protect rights, the Court must first examine whether Plaintiff's

complaint complies with Rules 8 and 20 of the Federal Rules of Civil Procedure.

A.  Failure to Comply with Rule 8 of the Federal Rules of Civil Procedure

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Rule 8 further provides that "[e]ach allegation [in the complaint] must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  Rule 8 requires a statement of the claim to be short "because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citation, alteration, and quotation marks omitted).  Rule 8 requires a statement of the claim to be plain "because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial."  *Id.*  Rule 8 requires allegations in a complaint to be "simple, concise, and direct" to "give fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Bulson v. Town of Brunswick,* No. 1:24-CV-503 (LEK/DJS), 2025 WL 743950, at *11 n.7 (N.D.N.Y. Mar. 7, 2025) (quotation marks omitted).

Plaintiff's complaint includes 147 numbered paragraphs spanning 54 pages.  *See* Compl., ECF No. 1.  The complaint asserts at least ten separate causes of action against 30 named defendants.  *See id.* 1–2, 3–9.  Such a complaint is neither short, nor plain. *See*, *e.g.*, *Salahuddin*, 861 F.2d at 43 (concluding that 15-page single-spaced complaint naming "20-odd defendants" and "contain[ing] a surfeit of detail" failed to comply with Rule 8's "short and plain statement" requirement); *Owens v. State of N.Y. Att'y Gen.*, 10 F. App'x 34, 35 (2d Cir. 2001) (affirming dismissal of 55-page complaint because it failed to comply with Rule 8's "short and plain statement" requirement); *Jones v. Nat'l Commc'ns & Surveillance Networks*, 266 F. App'x 31, 32

(2d Cir. 2008) (affirming dismissal of a 58-page, single-spaced *pro se* complaint with "87 additional pages of attachments, alleging over 20 separate causes of action against more than 40 defendants" for failure to comply with Rule 8's "short and plain statement" requirement).

Nor are the allegations contained in the complaint "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Plaintiff's 147-paragraph "Statement of Facts" describes events involving numerous individuals at different prisons. Further, Plaintiff does not list these events in chronological order, when he gives any date at all. Many of the "events" either do not describe particular incidents or are embedded within long complaints about DOC's general mistreatment of prisoners. Those events that are particularized enough to form the basis of a constitutional claim are enveloped in conclusory assertions, commentary, and irrelevant background information such that "court and the party who must respond to [them] . . . are forced to select the relevant material from a mass of verbiage." *Salahuddin*, 861 F.2d at 42. Such allegations are not "simple, concise, and direct" under Rule 8. *See*, *e.g.*, *Patterson v. O'Neal*, No. 3:21-CV-00287 (VAB), 2021 WL 2400258, at *2 (D. Conn. June 12, 2021) (plaintiff's 179 allegations were not "simple, concise, and direct," as required by Rule 8).

"When a complaint fails to comply with [Rule 8's] requirements, the district court has the power, on motion or *sua sponte,* to dismiss the complaint or to strike such parts as are redundant or immaterial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). Judge Dooley previously exercised this power to strike Plaintiff's similarly verbose complaints. *See*, *e.g.*, *Crispin v. Peiri*, 3:21-cv-00475-KAD,[3] ECF No. 1 (complaint naming 20 defendants and containing 143 numbered paragraphs); ECF No. 45 (motion to strike that complaint); ECF No. 47 (order granting motion to strike); *Crispin v. Walker*, 3:21-cv-00886-KAD, ECF No. 1 (complaint naming 30 defendants and

---

[3] "The Court may take judicial notice of its own records." *Barletta v. Quiros*, No. 3:22CV01110(SALM), 2023 WL 2687285, at *2 (D. Conn. Mar. 29, 2023).

containing 147 numbered paragraphs); ECF No. 38 (motion to strike that complaint); ECF No. 42 (order granting motion to strike). Yet well after Judge Dooley struck these complaints, Plaintiff continues to file complaints that do not comply with Rule 8.

"[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike." *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004). Thus, "[e]ven with the Court's exercise of leniency toward *pro se* litigants, affording them 'special solicitude,' as directed by the Second Circuit," *Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 522 (D. Conn. 2015) (citing *Triestman,* 470 F.3d at 475), "*pro se* litigants are expected to comply with the Federal Rules of Civil Procedure[.]" *Id.* (citing *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir. 1988)). This is especially true of experienced *pro se* litigants like Plaintiff.[4] *See Tracy*, 623 F.3d at 102 (noting that "the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented.").

While Rule 8 is intended to avoid placing an "unjustified burden on the court and the party who must respond to [the complaint]," *Salahuddin*, 861 F.2d at 42, the party most harmed by prolix complaints is the plaintiff himself. *See*, *e.g.*, *Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1154 (D. Minn. 2011) (noting that "kitchen-sink complaints also harm the very plaintiffs who bring them"). If the Court and Defendants are "forced to select the relevant material

---

[4] Court records show that Plaintiff filed eleven other lawsuits in this District before filing this lawsuit. *See Crispin v. Reischerl et al*, 3:19-cv-00413-VLB; *Crispin v. Roach et al*, 3:20-cv-01184-KAD; *Crispin v. Haber et al*, 3:20-cv-01209-KAD; *Crispin v. Fortin et al*, 3:20-cv-01796-KAD; *Crispin v. Brady et al*, 3:21-cv-00229-KAD; *Crispin v. Peiri et al*, 3:21-cv-00475-KAD; *Crispin v. O'Meara et al*, 3:21-cv-00500-KAD; *Crispin v. Sussel et al*, 3:21-cv-00885-KAD; *Crispin v. Walker et al*, 3:21-cv-00886-KAD; *Crispin v. Anderson et al*, 3:21-cv-00945-KAD; *Crispin v. State of Connecticut et al*, 3:23-cv-01636-SVN.

from a mass of verbiage," *Salahuddin*, 861 F.2d at 42, a "genuine dispute becomes almost impossible to discern. . . . The bad obscures the good." *Gurman*, 842 F. Supp. 2d at 1154.[5]

While the Court may dismiss a complaint that does not comply with Rule 8, *see Simmons*, 49 F.3d at 86, the Court declines to do so now.  Nonetheless, the Court will exercise its authority to strike portions of the complaint that do not relate to the claims permitted to proceed.  If Defendants are unable to answer or otherwise respond to the complaint after the Court strikes these paragraphs, Defendants are not precluded from requesting the Court to strike or dismiss the complaint in whole, as other defendants did in previous litigation. *See Crispin v. Peiri*, 3:21-cv-00475-KAD and *Crispin v. Walker*, 3:21-cv-00886-KAD.

## B. Misjoinder of Claims and Defendants

Recognizing that Plaintiff's complaint asserts claims arising from different time periods, the Court next turns to the question of whether Plaintiff's claims are properly joined in a single suit.

Federal Rule of Civil Procedure 20(a)(2) permits joinder of multiple defendants in one action if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences" *and* (2) "any question of law or fact common to all defendants will arise in the action."  The Court may "drop a party" or "sever any claim against any party" that it finds to be improperly joined.  Fed. R. Civ. P. 21.  Misjoinder of parties is not a ground for dismissing an action, *id.*, but misjoinder of unrelated claims against multiple defendants is a particular concern in prisoner-initiated cases "because of the applicability of the three strikes and filing fee provisions

---

[5] The Court is mindful of and sensitive to Plaintiff's mental health struggles, *see* Compl., ECF No. 1 ¶ 116 (noting that Plaintiff has received treatment for Schizophrenia), that may contribute to him filing such complaints, but the Court implores Plaintiff to draft his pleadings in such a way that the Court and Defendants may easily discern the genuine dispute.  It is in Plaintiff's best interest to do so.

of the Prison Litigation Reform Act." *Urbanski v. Dep't of Corr.*, No. 3:18-cv-1323 (VLB), 2019 WL 6683047, at *8 (D. Conn. Dec. 5, 2019). This concern is especially apt here. *See* note 4, *supra*.

With respect to the first requirement of Rule 20(a), what constitutes the same "transaction" or "occurrence" is approached on a case-by-case basis. *See id.* Whether claims arise out of the same transaction depends on the logical relationship between the claims and whether the "essential facts" of the claims "are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).[6] The same transaction requirement "means that there must be some allegation that the joined defendants conspired or acted jointly." *Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151, 154 (D. Conn. 2008) (internal quotation marks omitted). The second requirement—that a question of law or fact common to all defendants will arise in the action—is met where "the court finds that there is 'substantial' overlap in questions of law or fact across the claims." *Ardolf v. Weber*, 332 F.R.D. 467, 479 (S.D.N.Y. 2019). The mere fact that the same constitutional provisions or statutes may be at issue in two or more claims is not enough to render the claims sufficiently related for purposes of joinder; rather, where a plaintiff's claims under the same constitutional or statutory framework "arise from different circumstances and would require separate analyses," the claims are not logically related. *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 264 (D. Conn. 2012).

---

[6] Although *Harris* arose in the context of Rule 13(a), which applies to compulsory counterclaims, "[i]n construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a)." *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (citation omitted).

While Plaintiff describes many "occurrences" throughout his complaint, Plaintiff only provides specific timeframes for some of these occurrences. Plaintiff first describes an occurrence in December of 2023 in which medical staff denied Plaintiff his asthma breathing treatment under an "order" from Warden Jennifer Peterson-Reis. *See* Compl, ECF No. 1 ¶¶ 15–33. Plaintiff next describes an occurrence in January of 2024 in which Officer Tello slammed a door on Plaintiff's wrist after Plaintiff attempted to file a pleading in a pending civil rights case. *See id.* ¶¶ 6–14. Plaintiff then describes an occurrence in September of 2024 in which Officer Edmonds called a "false code" on Plaintiff. *See id.* ¶¶ 40–61. Plaintiff also describes a series of occurrences in December of 2024 in which Officer Szast choked Plaintiff and Officer Rivera slammed Plaintiff against a wall. *See id.* ¶¶ 66–93. Most of the rest of the occurrences described in the complaint are undated, so the Court is unable to place these occurrences in the one-year continuum spanning from December 2023, when Plaintiff entered Cheshire, *see id.* ¶ 2, to December 2024, when Plaintiff left Cheshire for Corrigan. *See id.* ¶ 96. And then Plaintiff alleges various events at Corrigan. *See id.* ¶¶ 121–27.

Plaintiff's allegations, occurring over more than a one-year period, are seemingly unrelated, such that they do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences[.]" Fed. R. Civ. P. 20(a)(2)(A). While some allegations of mistreatment are of the same type (physical assaults, for instance) and may, with additional facts not presented in this complaint, constitute "the same . . . series of transactions or occurrences," the complaint contains insufficient allegations that Defendants "conspired or acted jointly." *Arista Records LLC*, 589 F. Supp. 2d at 154.

Plaintiff's complaint could be read liberally as implying that Defendants all mistreated plaintiff because he had filed multiple lawsuits against prison officials before he arrived at

Cheshire, but Plaintiff alleges no non-conclusory or non-speculative facts suggesting that the named defendants "conspired or acted jointly" to violate his federally protected rights. *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (noting "[i]t is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." (quotation marks omitted)).  Plaintiff's "conclusory, vague, or general allegations of conspiracy" will not suffice to join defendants in a single action under Rule 20.  *See Jem Accessories, Inc. v. JVCKENWOOD USA Corp.*, No. 20-CV-04984, 2021 WL 706646, at *3 (S.D.N.Y. Feb. 22, 2021) ("The Second Circuit has held that even where multiple defendants use the same method to violate the law[, that fact] does not authorize them to be joined as defendants in a single lawsuit." (alteration in the original)); *Colonial Funding Network, Inc. v. McNider Marine, LLC*, No. 17-CV-02644, 2017 WL 5633160, at *4 (S.D.N.Y. Nov. 21, 2017) ("[C]onclusory allegations of conspiracy or joint action are insufficient to permit joinder under [ ] the general pleading standard of Rule 8[.]").

Even if conspiracy or joint action could be inferred from the allegations in the complaint, the plain text of Rule 20 also requires that "any question of law or fact common to *all* defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2)(B).  Here, there is no "question of law or fact" common to all thirty defendants.  Each occurrence or series of occurrences described in the complaint involve different defendants.  And no single defendant is involved in each occurrence. Moreover, the occurrences span a one-year period and involve distinct allegations of mistreatment that must be evaluated under different provisions of federal law.  As such, Plaintiff's claims are improperly joined under Rule 20 and must be severed under Rule 21.  *See*, *e.g.*, *Ibbison v. Quiros*, No. 3:22-CV-01163 (SVN), 2023 WL 1766440, at *8 (D. Conn. Feb. 3, 2023) (concluding that plaintiff's "claims relate to different time periods, different incidents, and, for the most part,

different Defendants" and thus were improperly joined under Rule 20 and had to be severed and dismissed under Rule 21).

Because the complaint contains improperly joined claims, the Court will conduct its initial review of Plaintiff's first claim alleging that medical staff denied him his breathing treatment, but it will sever and dismiss the remaining claims without prejudice. *See id.* (severing claims unrelated to first claim and dismissing them without prejudice). While these severed and dismissed claims are not properly brought in this action, Plaintiff may pursue them in separate lawsuits subject to the same requirements of Rules 8 and 20 described above.

The Court thus proceeds to consider whether Plaintiff has adequately pleaded his claim regarding breathing treatment against Defendants Warden Reis, Kelly Wolf, APRN Kang, Nurse Stacy, and Nurses Jane Doe #1 and #2. *See* ECF No. 1, ¶¶ 15–28.

C. Official Capacity Claims

Plaintiff's complaint asserts claims against Defendants in their official and individual capacities. *See* Compl., ECF No. 1 at 2. To the extent Plaintiff asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Additionally, to the extent Plaintiff's claim related to deprivation of his breathing treatment is brought against the Department of Correction, such claims for money damages are also barred by the Eleventh Amendment. *See Ripple v. Northumberland Cnty.*, No. 5:24-CV-0243 (GTS/TWD), 2024 WL 4893278, at *6 (N.D.N.Y. Nov. 26, 2024) (dismissing claims against the New York Department of Corrections for money damages on Eleventh Amendment grounds).

Plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation. *See Va. Office*

*for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, n. 16 (1996) ("Most notably, an individual may obtain injunctive relief under *Ex Parte Young* in order to remedy a state officer's ongoing violation of federal law). In light of Plaintiff's transfer from Cheshire to Corrigan, the Court cannot infer from the complaint that the Defendants involved in the breathing treatment incident at Cheshire are continuing to deny Plaintiff his breathing treatment at Corrigan. Accordingly, to the extent Plaintiff's claims for injunctive or declaratory relief are construed as relating to a denial of Plaintiff's breathing treatment, these claims are dismissed as moot. *See Shepard v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." (quotation marks omitted)).

Because Plaintiff's official capacity claims for damages, injunctive relief, and declaratory relief are dismissed, the Court considers only whether Plaintiff has sufficiently alleged claims against any defendant in his or her individual capacity for damages.

D. <u>Personal Involvement</u>

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quotation marks omitted)). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

Before the Court can evaluate a defendant's personal involvement, it must first determine whether Plaintiff has sufficiently alleged facts suggesting anyone violated his federal protected rights. *See*, *e.g.*, *Brown v. Dep't of Corr.*, No. 3:16-CV-00376 (WIG), 2021 WL 124417, at *8 (D. Conn. Jan. 13, 2021) (plaintiff cannot establish personal involvement of a defendant if there is no "liberty or property interest of which a person has been deprived"). In determining this, "*[p]ro se* complaints must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes*, 723 F.3d at 403 (quotation marks omitted).

Here, Plaintiff's complaint most strongly suggests that medical staff violated Plaintiff's federally protected rights through their deliberate indifference to Plaintiff's serious medical needs and in retaliation for Plaintiff exercising his First Amendment right to petition the government for redress of grievances. The Court discusses each claim in turn.

### 1. *Eighth Amendment Deliberate Indifference Claim*

The Court construes Plaintiff's complaint as containing a claim for deliberate indifference to serious medical needs under the Eighth Amendment. "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). As with all Eighth Amendment claims, a claim for deliberate indifference to medical needs has both an objective and subjective component. The objective component requires the plaintiff to demonstrate that he had a "'*serious* illness or injury' resulting in the infliction of unnecessary pain and suffering." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle*, 429 U.S. at 105). For the subjective element, a plaintiff must show that the prison official's actions were more than "an inadvertent failure to provide adequate medical care." *Id.* (citing *Estelle*, 429 U.S. at 105–06, 97). Deliberate

17

indifference can be demonstrated when prison officials "intentionally deny[ ] or delay[ ] access to medical care or intentionally interfere[e] with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05.

The Court assumes for purposes of initial review that Plaintiff's asthma attack—which was emergent enough for correctional officers to notify medical staff and send Plaintiff to the medical department for treatment, *see* Compl., ECF No. 1 ¶¶ 18–19—is a sufficiently serious medical need, in satisfaction of the objective component. *See*, *e.g.*, *Carlisle v. Goord*, No. 903-CV-296 FJS/GHL, 2007 WL 2769566, at *4 (N.D.N.Y. Sept. 21, 2007) (collecting cases) ("Although an asthma condition alone may not be serious enough to constitute a sufficient medical condition, an asthma attack, depending on its severity, may be sufficient."); *Kearsey v. Williams,* 2005 WL 2125874, at *4 (S.D.N.Y. Sept. 1, 2005) (on summary judgment, plaintiff's asthma attacks were sufficiently serious for purposes of an Eighth Amendment medical indifference claim where he had complained on three separate occasions of being unable to breathe as a result of his asthma, that his chest had "tightened up," and that he was experiencing chest pains).

While Plaintiff's allegation that medical staff denied him his breathing treatment under orders from Warden Peterson-Reis and Dr. Kelly Wolf, Compl., ECF No. 1 ¶ 22, is somewhat vague, Plaintiff has nonetheless sufficiently alleged that medical staff "intentionally den[ied] . . . access to medical care," *Estelle*, 429 U.S. at 104–05, both when Plaintiff initially arrived at the medical department, *see* Compl., ECF No. 1 ¶ 20, and after he returned to it feeling weak, light-headed, dizzy, and struggling to breathe. *See id.* ¶¶ 27–28. These allegations are sufficient to satisfy the subjective component of this claim. *See*, *e.g.*, *Holness v. Gagne*, No. 3:18-CV-01752 (JAM), 2019 WL 6683058, at *8 (D. Conn. Dec. 6, 2019) (subjective component satisfied where nurse refused to provide inhaler to inmate).

18

Because Plaintiff has alleged sufficient facts satisfying the objective and subjective components of an Eighth Amendment deliberate indifference to serious medical needs claim, this claim may proceed to service against any defendant who was personally involved in the alleged violation. Plaintiff alleges that "medical staff" denied him his breathing treatment without naming them. *See* Compl., ECF No. 1 ¶ 22. But when Plaintiff refers to "all present medical staffing" becoming "irate" at his accusation that they were retaliating against him, he describes medical staff as including Nurses Jane Doe Nos. 1 and 2, Nurse Kang, and Nurse Stacy. *Id.* ¶¶ 24–25. Thus, the Court will infer, for purposes of initial review, that the medical staff who became irate at Plaintiff were the same medical staff who denied Plaintiff his breathing treatment, and that they were acting on the orders of Warden Reis and Dr. Wolf. Accordingly, Plaintiff's Eighth Amendment claim may proceed against Warden Reis, Dr. Wolf, Nurse Kang, Nurse Stacy, and Nurses Jane Doe Nos. 1 and 2.

### 2. *First Amendment Retaliation Claim*

To plead a retaliation claim, an inmate must plausibly allege: (1) that he engaged in protected speech or conduct, (2) that the defendant took adverse action against the plaintiff, and (3) that the adverse action was the result of a retaliatory motive, i.e. that there was a causal connection between the protected conduct and the adverse action. *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks and citation omitted). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.* at 295.

Plaintiff maintains that he filed grievances and lawsuits against Warden Peterson-Reis and Dr. Wolf.  *See* Compl., ECF No. 1, ¶ 23.  Both activities are considered protected speech, *see Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (filing a lawsuit or grievance is constitutionally protected activity and will support a retaliation claim), in satisfaction of the first component. Medical staff's refusal to provide medical treatment to Plaintiff can be considered an adverse action, in satisfaction of the second component.  *See*, *e.g.*, *Irving v. Furtik*, No. 3:20-CV-1110 (CSH), 2022 WL 3027862, at *8 n.7 (D. Conn. Aug. 1, 2022) ("Denial of medical treatment for a period of time in response to protected activity may be considered adverse action.").  At this stage, Plaintiff's allegation that medical staff were under "orders" to "systemic[al]ly retaliate" against Plaintiff for filing a grievance against Warden Peterson-Reis, Compl., ECF No. 1 ¶ 33 must be accepted as true.  *See Dehany v. Chagnon*, No. 3:17-cv-00308 (JAM), 2017 WL 2661624, at *3 (D. Conn. June 20, 2017).  Having pleaded sufficient facts to satisfy all three components, Plaintiff's First Amendment retaliation claim may proceed to service against Warden Reis, Dr. Wolf, Nurse Kang, Nurse Stacy, and Nurses Jane Doe Nos. 1 and 2.

### 3.  Other Claims

Plaintiff lists numerous theories of liability in his "Introduction."  *See* Compl., ECF No. 1 at 1.  Merely invoking constitutional provisions or statutes is insufficient to state a claim. *see Gawlik v. Reis*, No. 3:23-CV-1194 (OAW), 2025 WL 744270, at *2 n.5 (D. Conn. Mar. 7, 2025) (noting that "listing a statute or constitutional provision is not sufficient to state a claim for relief under that statute or provision"). Nonetheless, the Court addresses these claims briefly because none are meritorious.

Plaintiff cites to the PAIMI Act, but "no individually enforceable private rights are conferred under the PAIMI Act."  *Crispin v. Connecticut*, No. 3:23-CV-1636 (SVN), 2024 WL

3860068, at *13 (D. Conn. Aug. 19, 2024).  The same is true for the federal Patient Bills of Rights.  *See id.*  Any cause of action under the ADA and Rehabilitation Act would fail for the same reason these causes of action failed in *Crispin v. Connecticut*: "Plaintiff fails to allege that he was denied participation in any service, program, or activity because of any disability."  *Id.* at *12.  Rather, Plaintiff maintains that he was denied medical treatment because of Warden Peterson-Reis's "orders" to "systemic[al]ly retaliate" against Plaintiff.  Compl., ECF No. 1 ¶ 33.  The remainder of the constitutional provisions listed in Plaintiff's introduction have either been addressed above or would seemingly apply to other claims that have been severed and dismissed.

### ORDERS

Based on the foregoing, the Court issues the following orders:

Plaintiff may proceed on his individual capacity claims for deliberate indifference to serious medical needs under the Eighth Amendment and retaliation under the First Amendment against Warden Reis, Dr. Wolf, Nurse Kang, Nurse Stacy, and Nurses Jane Doe Nos. 1 and 2.

The Court DISMISSES all other claims and terminates all other defendants.

The Court further strikes all paragraphs in the complaint that do not relate to Plaintiff's First and Eighth Amendment Claims discussed above.  These paragraphs include: 5–14 and 29–147.  Defendants need only answer the remaining paragraphs.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1)  If Plaintiff wishes to proceed immediately **only** on the claims set forth above against Warden Reis, Dr. Wolf, Nurse Kang, Nurse Stacy, and Nurses Jane Doe Nos. 1 and 2, he may do so without further delay.  If Plaintiff selects this option, he shall file a notice on the docket on or before **September 4, 2025**, informing the Court that he elects to proceed with service as to the

claims set forth in this paragraph. The Court will then begin the effort to serve process on Defendants named above in their individual capacities as described above.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **September 4, 2025**. **An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any Amended Complaint.** Moreover, any amendment is limited to repleading allegations related to medical staff's denial of Plaintiff's breathing treatment. Rules 8 and 20 apply to any amended complaint. **Thus, any amended complaint may not assert claims that have been severed and dismissed**. Likewise, any amended complaint that does not comply with Rules 8 and 20 will be dismissed. The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **September 4, 2025**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Doe Defendants**. The Court notes that, should Plaintiff choose Option 1 above and opt to proceed to service on the claims that this Initial Review Order allows to proceed, the Court will be unable to effect service on Nurse Jane Doe Nos. 1 and 2 without their full names. Plaintiff will be allowed ninety days from the appearance of the first Defendant in this action to provide the Court

with the first and last names of these individuals, so that the Court can begin the service process for them.

**Changes of Address.**  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the Court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or counsel for Defendants of his new address.

       **SO ORDERED** at Hartford, Connecticut, this 5th day of August, 2025.

                        */s/ Sarala V. Nagala*
                        SARALA V. NAGALA
                        UNITED STATES DISTRICT JUDGE